Judge Ewing
delivered the Opinion of .the Court. .
On the 30th July, 1818, Arthur L. Campbell executed to John Gwathmey a deed of trust, on three twenty acre lots, near Louisville, to secure the payment of five notes executed by said Campbell, on the 10 th day of March, 1818: namely, one to Richard A. Maupin for three thousand nine hundred and twenty-two dollars, payable one year after its date; another to said Maupin, for four thousand one hundred and ninety-four dollars, payable two years, after date; both of which were assigned to said Gwathmey; another to said Gwathmey, for four thousand three hundred and sixty-six dollars, payable three years after date; another to the same, for four thousand five hundred and eighty-eight- dollars, payable four years after date; and another to the same, for four thousand eight hundred and ten dollars, payable five years after date.
The three latter notes were afterwards, in October, 1818, assigned by the said Gwathmey to James C. Johnston; and the first of the two former, was assigned by said Gwathmey to John Howard, and the latter to John Fish-lie.
tóese't offi SS t0
Johnston, claiming the benefit of the deed of trust, filed his bill hi equity to foreclose Campbell’s equity of redemption, and have the lots sold to satisfy the notes ass'Snec*- to him; to which, by amendments, he makes Fishlie, Howard, and the heirs and personal representative of Gwathmey, defendants; and alleges that the notes assigned to Howard and Fishlie had been paid off and discharged; and also, that the assignments wei'e made by Gwathmey, under and in considex'ation of an usurious contract for the loan of money, and insists that they should be postponed, and' the land first made subject to the payment of his notes; and, by subsequeixt amendment, alleges, that Howard’s note had been paid off and lifted, by another note taken in discharge there? of, with security: which is admitted by Howard in his answer.
Campbell answered, denying that the two notes assigned to Howard and Fishlie had been paid off, and alleging that Gwathmey had executed to him, in 1817, a deed of conveyance, with covenants of seism, for the lot No. 34, and another lot of five acres; and states that, at the time of executing that deed, said Gwathmey was not seized; that there then existed incumbrances on the land for the consideration of the prior purchase thereof by Gwathmey, from one Johnson, and that Gwathmey had become insolvent. He makes his answer a cross kill against Johnston, Fishlie andHowax’d,&c. and prays that he may have an offset agaixxst the notes secured by the deed of trust, for the amount he is entitled to, on account of Gwathmey’s breach of covenant on the deed to him.
Johnston filed an answer to Campbell’s cross bill, in which he inserted an amendment to his original bill, in which he puts Campbell upon the proof of his claim of set-off, and sets up other demands due by notes from Campbell to him, as a rebutter to Campbell’s claim of set-off, and alleges the insolvency of Campbell, and his total inability to collect said demands from him.
The allegations of usury in the assignments of the notes to Howard and Fishlie, being inserted as an amendment to the original bill, in the foregoing answer of John *179 ston, the caption of which, purported to be an answer only to Campbell’s cross bill, were not noticed by Fish-lie, or answered, and were taken for confessed on the hearing.
Decree, and sep' arate writs of er" rorby twodef’ts.
Where the reversal of a decree is sought by writ of error, all who can properly unite in the same writ, should do so, to avoid a multiplicity of suits: all against whom there is a joint decree should unite; and all parties—whether compl’ts or def’ts in the suit —who complain of the same supposed errors and only the same, and can unite in a joint assignment of errors as prejudicial to all, should unite in the writ of error. But where different decrees are, rendered in the same suit,against different def’ts, or the same decree is prejudicial to different defendants in differ-,. ent ways, so that they cannot all assign, the same errors each one, or each set» may maintain, a separate writ of error.
The Circuit Court decreed, that Fishlie’s demand should be postponed to those of Johnston; and also, that the set-off claimed by Campbell, should be rebutted and extinguished, by the notes set up by Johnston, as a rebutter, and that the two lots, Nos. 35 and 36, should be sold to satisfy—first, his notes secured by the deed of trust, and afterwards the note of Fishlie, &c.
To reverse this decree two writs of error have been prosecuted to this Court—one in the name of Campbell, and the other in the name of Fishlie.
Both of these writs being founded on the same record and decree, they will be taken up and decided together.
It is objected on the part of Johnston, as a preliminary question, that it is irregular and erroneous to prosecute several writs, and for that cause, both should be quashed.
It is often a difficult and perplexing question, to determine who may join, and are proper parties as plaintiffs, in writs of error to reverse decrees in chancery. Owing to the peculiarity of the proceedings in chancery, the many parties and numerous decrees, as well as the complicated and partial character of the decrees rendered, sometimes in part in favor of th.e complainant, against part of the defendants, and in favor of others, and against some of the defendants, and in favor of other defendants—the writ of error, in its origin, is badly suited to decrees in chancery, and was originally unknown. It was, in its origin, made to apply to a judgment at law, which is generally a unit, and in whole, rendered in favor or against the parties, plaintiffs, or defendants, and in which no cross judgments can be rendered. Its application to decrees has, however, long been indulged in, sanctioned by legislative enactment, and should be so applied and modeled by this Court, under the power it possesses of regulating its own process, as to suit *180 the cases that may arise, and attain the ends of justice. 3 Lit. Rep. 377.
A deft makes liisansvv era cross bill; the compl’t answers it,, and the caption purports nothing more than an answer, yet he introduces into the body of it, an amendmentto his original bill,charging a specific fact against another defendant; which,being over looked by the latter, is taken for confessed.— This was a mode of practice calculated to entrap the party charged in the amendment --which should not he tolerated.
*180 The decree in this case is not a joint decree against Campbell and Fishlie, nor can they be jointly interested in reversing it. So far from it, the decree is rendered against Campbell, and in favor of Fishlie, as to the amount of the note assigned to him; and that Campbell’s lots shall be sold to- discharge it.
Fishlie cannot join with Campbell in assigning errors in the decree in his favor. It cannot be said that he is prejudiced by a decree directing Campbell’s lots to be sold to satisfy his demand. Nor is Campbell prejudiced by that portion of the decree,'which directs Fishlie’s demand to be postponed, and Johnston’s to be first satisfied. If Campbell’s lots are sold, it can be a matter of no interest to him, whether the proceeds shall be first applied to the extinguishment of Johnston’s or Fishlie’s demand; or whether they shall be paid pari passu out of the proceeds. It is therefore a matter of no interest to him to join in the assignment of errors to this portion of the decree, which is the sole foundation of Fish-lie’s complaint. We therefore conclude that it was not necessary for Fishlie and Campbell to join in the prosei cution of the same writ, but several writs will well lie, in favor of each.
It is certainly proper—to avoid a multiplicity of suits, which is always odious to the law, and to be avoided if practicable—wherever the decree is joint, or jointly prejudicial to the interest of parties, or when they may all unite in the joint assignment of errors, that they should join in the prosecution of a joint writ of error, whether they be complainants or defendants in chancery. But this is not a case as we conceive, falling within any of the rules that demand a joint writ. And therefore are of opinion, that the writs should not be quashed.
The first question on the merits which we will notice, is that portion of the decree, which postpones Fishlie’s demand to those of Johnston. The only ground that we perceive, upon which this postponement was directed by the Circuit Court, is the charge of usury in the assignment of Fishlie’s note to him, practiced by him up *181 on Gwathmey, introduced into Johnston’s answer to Campbell’s cross bill—the caption of which answer, purports to be an answer only to the cross bill, and not an amendment to the original bill. And which amendment, so introduced, was overlooked by the counsel for Fish-lie, and taken for confessed.
Usury in the contract between an, assignor and his assignee, upon which a note was assigned,does not affect the note itself: and cannot be taken advantage of by a third, party, to gain a precedence for his own debt, in the application of the trust estate conveyed to secure bothdebts. The laws against usury are made, to protect those only upon whom it is practised, anda stranger to the will o£ U contract can take no advantage of the usury the party \yho submits to it. with which it is affected,
The practice of introducing amendments to an original bill, in an answer to a cross bill, is certainly very loose and irregular. But when introduced into a paper purporting by the caption to be an answer only, to the cross bill of a co-defendant, it is well calculated to entrap. The counsel and parties, generally, if not universally, look to the papers and pleadings, filed in chancery causes, for the steps taken. If this was the course pursued in in this case, they would have found, that the paper, which the charge of usury is contained, in its caption and commencement, purports to be an answer only to the cross bill of Campbell; and no intimation is made of an amendment to his original bill against Fishlie. The allegation is introduced, in the body of the answer, and there the statement made, that it is an amendment to his' bill; and in this disguised form, and without any subpcEna executed upon it, on Fishlie, it is taken for confessed. Such a practice is certainly calculated to entrap, and should not be sanctioned by this Court.
But waiving the manner of its introduction, the charge of’ usury in the assignment, if true, cannot, as we conceive, be taken advantage of by Johnston. It is a matter inter alios acta ,which concerns Gwathmey and his representatives only, and cannot be of any interest or concern to Johnston.
It is not charged or pretended that the note is infected with usury. The fact that it was assigned upon an usurious arrangement, after the execution of the deed of trust, cannot surely so far vitiate the note as to make it lose its place in the deed of trust. Its amount remains the same, and its equitable lien the same, whether it was assigned upon an usurious contract or consideration, or not, or without any consideration at all.
Held, that C. is entitled to a set-off, as claimed by him—p. 178, be» cause of the insolvency of J. G. the debtor; but, that J. may rebut that right with the old debt due him from C. p. Í78.
The damages to be recovered for a breach of covenant of seizin, is the amount of the purchase money and interest on it.
wards passed— Lots of lan/i are conveyed, with a covenant of seizin, bo one who mortgages them, t9 secure divers notes to the vend or;which notes are after-some 'to one assignee, someto another; a breach of-the covenant of seizin occurs as to one of the; lots, and one of the assignees of the notes satisfies the damages by an old demand of his own against the covenantee, and thus precludes him of his equitable right of set-off against the assigned, secured note, and takes his placeas to his claim for damages for the breach of the, covenant of seizin. Held that, as the latter was a personal demand against the covenantor'(vendor of the lots) for which the covenantee had no lien on the lots, no such lien accrued to biis assignee, by the latter’s payment of the damages and substitution to the rights of the covenantee in that respect; and he can, therefore, have no right to preference over others sccy.rod by the same mortgage on the lots.
The statutes of usury were made for the benefit of the necessitous' borrower, who may renounce their benefit if he chooses, or refuse to avail himself of their protection. It lies not in the power of a stranger to take advantage of them, against his will or consent, or to shield himself under legal provisions, intended only for the protection of another, who, if present, might refuse to plead or rely upon them. Hardin's Rep. 81; 7 Peters' Rep. 103. It is, therefore, clearly the opinion of this Court, that there is error in that portion of the decree which postpones the note of Fishlie to those of Johnston.
In relation to the residue of the decree—JohnGwathmey appears to have become insolvent about the time the notes set up by Johnston and Fishley were assigned, and to have left the state. The claim of set-off set up by Campbell, appears therefore to be well founded, though there seems to be no connection between the demands. But the set-off is equitable, and subject to the equitable control of the Chancellor, and may well be rebutted by the demands due from Campbell to Johnston, set up by Johnston.
Campbell’s claim of set-off, arises from Gwathmey’s breach of his covenant of seizin, and the amount is to be ascertained by the consideration of the lot with interest thereon, from the date of said covenant of seizin, up to the rendition of the decree—which may be extinguished by an amount equivalent thereto, of the aggregate of principal and interest of the demands set up by Johnston as a rebutter.
But it is contended by Johnson’s counsel, that the equity of Campbell to damages, upon Gwathmey’s breach of seizin, is prior to the equity of Johnston and Fishlie and that Johnston having extinguished the demand by other demands against him, should be substituted in the place of Campbell, and entitled to his prior equity. Camp *183 bell has no lien upon the two lots, which remain subject to Johnston’s and Fishlie’s deed of trust, prior or subsequent. His demand is a personal demand on Gwathmey for damages. And if Johnston be substituted, he should only be substituted in his place, as to his personal demand against Gwathmey. Such substitution cannot give to him any prior lien on the lots sought to be foreclosed; but only a decree over against Gwathmey’s representatives for the" amount of Campbell’s demand against them, extinguished by the rebutter of Johnston.
A mortgagor has a demand against the mortgagee, and a right of set-off against the notes secured by the mortgage, which are in the hands of different assignees:tbe set-off should diminish the debt due each assignee ratably; and if one of them has extinguished the set-off, and the estate is not sufficient to pay all, the proceeds of it should be so distributed, as to make all contribute ratably to the set-off, and receive ratable shares of the sur plus.
Where a deed of trust, made to secure a debt, provides for the sale of the property, and designates the pi ace where the sale shall be made, and the time and manner of ad-the perty, the chancellor, in decreeing a sale, should pursue the directions of the deed in those particulars. A decree directing a sale at a different place, or a different and less effective mode of advertising, is erroneous.—The act of 1820, requiring a proceeding in chancery and decree (as in case of a mortgage) before any property shall be sold under a deed of trust, does not require any departure from the agreement of the parties as to the place of sale, or mode of advertising—and if it did, it would be unconstitutional as to contracts made before its passage.
But as the claim of Campbell against Gwathmey, if not rebutted by Johnston’s demand against Campbell, should equitably have fallen, ratably, according to the amount of each, upon the claims of Fishlie and Johnston, secured by the deed of trust, and as Johnston has extinguished the whole amount by his rebutter, it is equitable and just, that the amount of the proceeds of the sale of the lots, should be distributed, ratably, between Johnston and Fishlie, according to the amount of the demand of each, when Fishlie’s demand shall be reduced, by a deduction therefrom, of his equal ratable share of the set-off set up by Campbell, provided there shall not be sufficient to satisfy both claims.
But the counsel for Campbell contends, that the Circuit Court has erred in not pursuing the directions of the deed of trust in the decree of sale. In this, we are satisfied the Court has erred.
The decree directs, “that the commissioner shall put “ up notices in at least three public places in the county, “ of which the court-house must be one, at least three “ days before the day of sale; and that the sale shall be “ made at the court-house, on a court day.”
The said deed of trust, after directing the sale of said lots, on the premises, or so much of them as may suffice for the satisfaction of said debts, after they shall have severally fallen due for sixty days, contains the follow *184 ing stipulation:;—“That the time and place of sale of “ said lots, or any one or more of them, or any part “ thereof, shall be advertised at least nine weeks successive- “ ly, in some newspaper, then printed in Louisville aforesaid,' “ previous to such sale or sales; and that no sale or sales “ of the said -lots, or any one or more of them, or any “ part of them, shall be made, until after the said days of “ grace shall expire, and not until the time and place of such “ sale or sales shall have been previously advertised as afore- “ said.”
It is clear that, the decree has not regarded the stipulations, or pursued the directions of the deed of trust, as to the place of sale, or the time, manner or mode of giving notice of the same.
The legislature, by the act of 1820, (1 Slat. Law, 449,) has transferred to a Court of Chancery, the power of deci'eeing the sale of trust property, which, by the terms of the deed, was before vested in a trustee. By this act the Chancellor is substituted in the place of the trustee, with all the powers which the trustee possessed of carrying into effect the objects of the trust. But the act does not confer upon the Chancellor the power to disregard, change or abrogate the stipulations of the deed of trust, or the terms of the contract between the pai'ties, as to the lime, manner or mode of the sale. These are matters about which the parties were competent to contract, and which the Legislature has not attempted to alter, change or annul, and which they could not have done, in contracts entered into before its enactment, without a manifest infraction of that part of the tenth section of the constitution of the United States, which inhibits the enactment of any law by a State, impairing the obligation of contracts, as well as that part of the constitution of Kentucky, which inhibits the enactment of any law “impairing contracts.”
As it was competent for the parties, at the time when the deed of trust was entered into, to stipulate the terms and place of sale, as well as time and manner of giving notice, those stipulations should be regarded and substantially pursued, if practicable, by the Chancellor. They wore introduced, it is to be presumed, with a view *185 to advance the sale of the property, aiid make it command a better price, and the manner of giving notice, as well as the length of time that notice is required to be given, by the" stipulations of the deed of trust, are certainly calculated to effect that object. And it jnay be, that the property would command a better price, if sold upon the premises than if sold at the court house. Wheth'* er it would or not, it was within the legal discretion of the parties to determine that it would, and to stipulate accordingly, and those stipulations, as far as practicable, should be carried out by the Chancellor, in his decree, unless waived by the parties.
The advertisement of a sale, to be made by a commissioner,un der a decree to sell a trust estate, for payment of debts decreed, do scribes the estate as “two 20 acre lots in the city of Louisville lately belonging to said C. No. &c. more particularly described in comp’t’s'j bill” — but the lots are not in’the city, but about £ a mile from the limits: held, that this error of descriptioninthead vertisement, con stitutes a good exception to the com Vs report,& sufficient ground for quashing the sale— especially as the def’t had owned lots in the city, which together might be called 20 acre lots.—The referrence to the bill (where the prop evty was correctly described) did not sufficiently obviate the error.
The commissioner appointed to make sale of the lots gave notice, according to the directions of the decree, by setting up notices of the time and place of sale as directed. But in those notices, described the lots, as two twenty acre lots in the city of Louisville, lately belonging to said Campbell, No. 35 and 36, more particularly described in the complainant’s bill. Now the lots advertised to be sold are not in the city of Louisville, but are in the county of Jefferson, some half mile outside of the limits of the city, and have never been condemned or added to the town.
There also appears, from the papers exhibited in the cause, that there were a number of lots in the city of Louisville, lately owned by said Campbell, which by throwing several adjoining lots together, might well be denominated twenty acre lots.
The description of the lots in the notices, is certainly erroneous and misleading, unless the misdescription is corrected by the reference to the bill. We think this reference will not suffice in this case. Three days notice only, is required by the decree to be given—a very short period to enable a person who might wish to purchase, to examine the Clerk’s office, and make himself acquainted with the property to be sold. Besides, many might wish to buy, who are wholly unacquainted with legal proceedings, and are entirely incompetent to the examination and proper understanding, of law papers. Besides, there might be individuals desirous of purchasing a country residence, outside of the bounds of the *186 city-, and not willing to purchase lots in the city. Such individuals if they should meet with the notice, discovering that the lots advertised to be sold were described as lots in the city, would not be induced to examine further, to ascertain their • true place. A general description, certain to a common intent, should be given of the time and place of sale, as well as of the property to be sold, and such as is not misleading.
A purchaser at a sale made by a commissioner un der a decree, is not, in general, affected by a reversal of the decree. But held, that a confirmation by the chancellor is essential to complete a salebyhiscom’r, and his order of confirmation is subject to reversal, and may, it seems, beincluded in a writ of error upon the decree; and tho’ exceptions to the commissioner’s report be overrul ed, the sale confirmed, and the deed directed to be made, yet, if a supersedeas is then obtained, before the deed is actually execut ed, and the order of confirmation, as well as the decree, is reversed, the purchaser takes nothing by his purchase.
A motion was made in the Circuit Court, to quash the sale, on account of this defect in the notice, which was overruled by the Court, and the commissioner ordered to make a deed to Breckinridge, the purchaser; but before th'e decree and order was consummated by the execution of the deed, further proceedings were suspended by the supersedeas of this Court. Although in general the purchaser under an erroneous decree in Chancery, may not be affected by the reversal of the decree, yet, as was determined by this Court in the case of Forman & Dana vs. Hunt, at the last spring term, [3 Dana, 614] such sales are not complete until they are sanctioned by the Court.
And as in this case, a motion was made to quash the sale upon grounds which we have adjudged tenable, but which was overruled by the Circuit Court, and the further order of the Circuit Court directing the sale to be consummated, suspended by the order of this Court, we regard the sale as well as the decree within the power and control of this Court.
It is therefore decreed, that the decree and order of the Circuit Court, overruling the motion to quash the sale, and ordering a deed to be made, be reversed and both causes remanded, that a decree may be rendered not inconsistent with this opinion.