Pope *vs.* Solomons, Williams & Co., and Watkins.

JOHN D. POPE, plaintiff in error, *vs.* WILLIAM SOLOMONS, E. H. WILLIAMS & CO., and WILLIAM E. WATKINS, defendants in error.

1. Where Williams borrowed of Solomons five hundred dollars, and promised to pay six per cent. per month for the use thereof for a part of the time, and five per cent. per month for the balance of the time, which was paid but not credited on the note, and afterwards sold out his entire property to a third party who obligated himself to pay Solomons the five hundred dollars,—on a bill filed by a creditor of Williams against Solomons and the third party who purchased Williams' entire property, alleging that Williams had left the State and was entirely *insolvent*, praying that the usurious interest paid by his insolvent debtor Williams to Solomons, might be credited on the five hundred dollar note, and that the purchaser of Williams' property might be restrained from paying the amount of the usurious interest over to Solomons, and be decreed to pay the same to the creditor's demand: *Held*, that the creditor was entitled to have an account taken of the amount of usury paid by Williams, the insolvent debtor, to Solomons, and to have that amount applied in payment of his debt.

2. Although a party may have a common-law remedy, yet, if it is not as complete and effectual as it would be in a court of equity, the latter Court having first taken jurisdiction of the cause, will retain it.

Motion to dissolve Injunction.   Decided by Judge COL-LIER.   Chambers.   Fulton County.   September, 1867.

The allegations in Pope's bill were, that E. H. Williams & Co., (composed of Williams and Thomas H. Bomar,) rented from him a store-room at $175 per month, and were in arrears with him $500 with interest, for rent of September, October, November and December, 1866; that on 1st January, 1866, E. H. Williams borrowed of William Solomon $500, agreeing to pay him five or ten per cent. a month as interest, payable monthly, that this interest was paid until a large amount had been received by Solomon, which ought to have been credited on the principal and lawful interest, which would have reduced the debt to the sum of $262, but had been applied to discharge such usury; that in March, 1867, E. H. Williams had an interest in a stock of goods worth $1,500 or $2,000, that he then sold his interest therein to William E. Watkins, Watkins agreeing in writing to pay

Solomon the entire amount for all the money borrowed from Solomon, with all the usury on the same, and charge the same as paid to Williams on account of said stock; Williams absconds, leaving no property in the State, and Bomar is insolvent. Discovery is sought from Bomar as to said indebtedness and his insolvency, from Watkins as to his purchase and how he was to pay for it, and from Solomon as to the amount loaned, at what rate, how much has been paid, &c.

The prayer is that Watkins be enjoined from paying Solomon till further order, and that any balance due from Watkins to Williams, after paying Solomon what is due him, (allowing him lawful interest only, and charging him with the usury received,) may be paid by Watkins to Pope.

The bill was sanctioned by Judge Warner, (then Judge of the Coweta circuit). Injunction was issued, and the bill was served on Solomon and Watkins.

Solomon answered that, according to his information, in February, 1866, said E. H. Williams & Co. went into said store as tenants of one Queen, and afterwards, and before 1st September, 1866, became by some arrangement Pope's tenants, and paid him all rent due to that date, and on that day, with notice to Pope, Bomar withdrew from the firm, (he says this discharged the firm,); that E. H. Williams did not owe Pope $500 or any sum for rent from 1st September to 1st December, 1866; he loaned Williams $500 on 24th May, 1866, at six per cent. per month, for thirty days, and took from Williams therefor his five promissory notes for $100 each, with William Watkins as security; Williams did not pay the notes when due, but continued to use the money, and paid Solomon thirty dollars on the first of each month for five months; that they then changed the rate to five per cent. a month, and accordingly Williams paid Solomon twenty-five dollars a month for five months more, ending 24th February, 1867, which paid up to 24th March, 1867, and he never paid anything since.

Solomon and Watkins both answered that Williams owned an interest in the stock of goods and store-house on the corner of Whitehall and Peachtree streets, together estimated at

$2,000, and on the 23d March, 1867, in writing, sold to Watkins all his said interest in consideration that he (Watkins) would pay off and discharge all the debts of said concern due for the stock, amounting to $1,500, and " also for and in consideration of the sum of five hundred dollars which I (Williams) owe to William Solomon for borrowed money, and for which he, the said Watkins, is security," that Watkins was no party to the contract for usury, but was bound as security on said notes and was to pay them to Solomon without usury; they admit Bomar's insolvency, and that Williams absconds, and so far as they know, left no property in this State.

In September, 1866, a motion was made to dissolve the injunction and dismiss the bill for want of equity. To support his bill, Pope read in evidence his affidavit, to the effect that his said store-room was rented by him to said Williams and Bomar from March, 1866, to January, 1867, and that four months' rent, to-wit: $500, with interest, was due to him by them.

The chancellor sustained the motion on the ground taken, and dismissed the bill. This decision is brought up for review.

BROWN & POPE, for complainant, plaintiff in error.

HILL & CANDLER, for defendants in error.

WARNER, C. J.

The error assigned to the judgment of the Court below in this case, is in dissolving the injunction and dismissing the complainant's bill for want of equity. The complainant is a creditor of E. H. Williams & Co., who are *insolvent.* Williams sold out his stock of goods to Watkins, the latter obligating himself to pay certain debts due by Williams on account of the stock of goods so purchased, including a note of five hundred dollars due to Solomon. The complainant alleges that the note to Solomon was given upon an usurious contract—that Williams has already paid *usurious interest*

upon that note, which, if it had been credited thereon, would have reduced the same to the sum of two hundred and sixty-two dollars : that is to say, after deducting the amount of the *usurious* interest paid by Williams to Solomon, there is now due upon the note, only the sum of two hundred and sixty-two dollars which Watkins ought to pay Solomon under his obligation as the purchaser of Williams' stock of goods, instead of five hundred dollars ; and that the complainant as the creditor of his insolvent debtor, is equitably entitled to have an account of the usurious interest paid by him to Solomon, and that the same be credited on the note ; that Watkins be enjoined from paying to Solomon any more than what is *lawfully* due on the five hundred dollar note, after crediting the same with the amount of usurious interest paid by Williams to Solomon, and then to account with and pay over to complainant what may be remaining in his hands due to Williams for the stock of goods purchased from him—in payment of his demand against Williams. In other words, the complainant seeks to reach such an amount of the effects of Williams, his insolvent debtor, as may be remaining in the hands of Watkins, after the debt due by Williams to Solomon shall be purged of the usury ; that Watkins ought not, either in law or equity, to pay more than two hundred and thirty-eight dollars out of the effects purchased by him from Williams, under his agreement to the Solomon note, and that as a creditor of Williams he is entitled to have the balance remaining in the hands of Watkins applied to the payment of his demand.

Such is substantially the case made by the complainant's bill. Lawful interest in this State for the use of money loaned, is seven *per cent. per annum.* Usury is the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest. The effect of usury is to *annul* and make *void* the contract for *the usury*—the lender having the right to recover the principal sum loaned, with legal interest. All titles to property made as a part of an usurious contract, or to evade the laws against usury, are *void.* Revised Code,

sections 2023, 2024, 2025. The contract by Williams to pay the *usury* to Solomon, was *void*, and he would have been entitled under the law to have recovered it back in a suit instituted therefor.

But it is said, no one but the party who pays the usury can take advantage of it—that it is a *personal* privilege not extended to strangers. As a general abstract proposition, it is true that a contract for usury cannot be avoided by a *mere stranger* to the transaction. But here the complainant is not a *mere stranger* having no interest in the result of this usurious transaction between Solomon and Williams, he is a creditor of Williams, claims under and through the latter to the extent of his debt; *his interest is affected by the usurious contract,* and to the extent of that interest he is entitled to be heard in relation to it; there is a *legal privity* between the complainant and his insolvent debtor; he is interested in his insolvent debtor's *estate,* so far as the payment of his debt is concerned, and is not, therefore, an officious interloper. Dix vs. Van Wyck, 2d Hill's N. Y. Rep., 522; Post vs. Dart, 8th Paige's Ch. Rep., 639.

1. Having an interest as a creditor in the property and effects of his absconding insolvent debtor, he is equitably entitled to the assistance of the Court to restrain Watkins from paying over to Solomon the full amount of the five hundred dollar note out of the effects of Williams in his hands, until the usurious transaction can be investigated, and to have his debt paid, if there shall be found sufficient funds for that purpose in the hands of Watkins, upon the final hearing of the cause.

2. It was also insisted that the complainant in this case had an adequate common-law remedy by garnishment. Although the complainant might have sued out a process of garnishment under the provisions of the Code, yet, upon the facts as stated in the record, we do not think his common-law remedy would have been as *complete* and *effectual,* as in a Court of equity; besides, the latter Court having *first* taken jurisdiction of the cause, will retain it. Revised Code, sections 3040, 3041.

Let the judgment of the Court below be reversed.