Gatewood *vs.* The City Bank of Macon *et al.*

---

WILLIAM A. GATEWOOD, plaintiff in error, *vs.* THE CITY BANK OF MACON *et al.*, defendants in error.

When A filed a bill against the City Bank of Macon, charging that he was the holder of a mortgage made by B on certain real estate, founded on a valuable consideration; that the said City Bank was also the holder of a mortgage made to it by B upon the same property; that the mortgage to the bank was given to secure the payment of a note made to the bank by B for the loan of money at more than seven per cent. per annum, and was therefore null and void; that the mortgage to the bank was of older date than the mortgage to A; that the junior mortgage contained upon its face notice of the mortgage to the bank; that the mortgage to the bank had been regularly foreclosed by rule *nisi*, notice and judgment of the Superior Court of the county of Putnam, where the land was situated, and ordered to be sold to satisfy it; that B was insolvent, and that unless A could set aside this illegal mortgage, he would lose his money.

The bill prayed an injunction. The defendant, on the rule to show cause, denied there was equity in the bill, and insisted that if the complainant had any remedy, it was at law, under sections 3903 and 3892 of the Revised Code. The Judge refused the injunction, and the complainant excepted:

*Held*, That there was no error in the judgment of the Court refusing the injunction. Admitting that the note, to secure which the mortgage to the bank was given, is null and void for usury, if the complainant has any remedy, it is only under sections 3903 and 3892 of the Code, and as that remedy, if it applies to his case, is made ample and complete, equity has no jurisdiction.

Injunction. Mortgage. Usury. Before Judge HILL. Putnam county. At Chambers. March 31st, 1873.

William A. Gatewood filed his bill against the City Bank of Macon, Benjamin F. Adams, and James L. Wilson, sheriff of Putnam county, making the following case:

Adams was indebted to complainant in large sums of money, and complainant was also liable in divers other large amounts as indorser, security and guarantor for him. In order to secure the complainant in the amount of said indebtedness and to indemnify him from loss on said contingent liabilities, Adams, on March 3d, 1872, executed to him a mortgage upon certain personal property and real estate in the county of Putnam, said instrument setting out a prior mortgage on said realty given to the City Bank of Macon. This last mentioned instrument was executed under the following circumstances: On April 28th, 1871, Adams negotiated a loan from said Bank upon two notes for the aggregate amount of $10,000 00. Said notes were discounted at the rate of one and one-half per cent. per month off, or at some other rate exceeding seven per cent. per annum. Cotemporaneously, the mortgage aforesaid was executed to secure the payment of said notes. Said mortgage has been foreclosed, the execution issued thereon levied upon the property described therein, and the property advertised for sale on the first Tuesday in January, 1873. Complainant's mortgage has also been foreclosed.

The instrument under which said bank claims a lien, and all proceedings based thereon, are utterly null and void as contrary to the laws of this State, enacted as a restraint upon banks to prevent their usurious charges. Unless complainant is enabled to avail himself of his mortgage, he will lose large sums of money, as said Adams is hopelessly insolvent. Prayer,

Gatewood *vs.* The City Bank of Macon *et al.*

that said judgment of foreclosure be decreed null and void; that the City Bank of Macon may be perpetually enjoined from enforcing the same; that the writ of injunction may issue restraining the said City Bank of Macon and the said James L. Wilson, sheriff of said county, from proceeding further at law against said mortgaged property; and that the writ of subpœna may issue.

A temporary restraining order was granted by the Chancellor, (Hon. P. B. Robinson,) and the third Monday in March, 1873, was appointed for a hearing of the motion for an injunction. At the time designated, Judge Bartlett, of the Ocmulgee Circuit, having been of counsel, was disqualified from hearing the motion, and it was agreed between counsel that the case should be heard by Judge Hill.

The Chancellor refused the injunction, and the complainant excepted.

WILLIAM A. REID, for plaintiff in error.

A. PROUDFIT; C. L. BARTLETT, for defendants.

McCAY, Judge.

The general rule that a judgment of a competent Court concludes the parties to it and their privies, on all questions pertaining to the merits of the action, is almost without qualification, and is of universal acceptation: See Phillip's Evidence, volume 2, pages 4–10; and Cowen's American Notes to Phillips, volume 4, page 1. Even equity will not interfere, except for fraud, accident, surprise, mistake, etc., and only then on proof of due diligence by the complainant. And Lord Eldon, in 14 Vesey, 31, says in reference to this very question, of coming into equity for relief against a judgment at law, on the ground of usury, that the neglect to plead at law is no ground for equitable interference. There is, however, a class of judgments in England, and in many of the States of this Union, where Courts, both of law and equity, have interfered, to-wit: judgments entered by confession under a warrant of

attorney. And the foundation of the interference is, that the judgment obtained, as it is, without notice or pleadings, but confessed on the record by an attorney, under an authority attached to and part of the usurious contract, is from its very nature, a part of that original oppression and illegality against which the usury laws were aimed. Originally, even in such a judgment, the Courts would not interfere, in consequence of the estoppel which every judgment creates between the parties; but subsequently, under a suggestion of Lord Hardwick, it was done in the Common Pleas and King's Bench, though in the Exchequer it has been uniformerly refused. In Fannin vs. Dunham, 5 John. Chancery Reports, 121, Chancellor Kent entertained a bill for relief against such a judgment, on the ground that the New York Law Courts had lately ceased to interfere, even with such judgments. In doing so, however, he goes into the history of the practice of the English Courts on the subject, reviewing the cases, and showing the origin, reason and history of the practice. But in Fannin vs. Dunham, the Chancellor only interfered on the payment by the complainant of the principal with legal interest, and he then shows that it is only on such terms that even a Court of chancery will interfere, even with a judgment obtained by confession on warrant of attorney.

In 2 Hill (S. C.) Chancery Reports, 474, the Chancellor says that a case is not to be found in the books, of an interference by chancery with a judgment at law, obtained in the usual mode, under pleadings and notice, on the ground of usury in the original contract. That contract has been merged into the judgment, which imports absolute verity; and it is conclusively presumed that the parties made all the defenses allowed by law, and that the judgment is the conclusion of law on the true facts of the transaction. In Thomas vs. Berry, 3 John. Chancery, 399, there was a bill filed for relief against two judgments—one obtained by confession and warrant of attorney, and one on regular proceedings, by process, service, etc. The bill charged the most oppressive usury in both cases, but the Court, while it entertained the bill and

Gatewood *vs.* The City Bank of Macon *et al.*

gave relief (on the terms laid down in Fannin *vs.* Dunham,) against the judgment obtained by confession under warrant of attorney, refused to interfere with the regular judgment. The complainant was in *laches* for failing to plead, and the Court was restrained by the stern rule that the judgment at law was an estoppel.

As a matter of course, if there be fraud in any of the other grounds for equitable interference, there is no difficulty ; but if the only objection to the judgment is that the original debt was usurious, the doctrine seems to be settled that it is too late to ask even chancery to interfere, after a regular judgment at law. Nor are we able to see how the case is strengthened when the complainant is a creditor of the defendant, instead of the defendant himself. He is clearly a privy of the defendant ; his only interest in the matter is, that the defendant is his debtor. He comes into the controversy through the defendant, and it would entirely upset the whole doctrine of the conclusiveness of judgments, if they were liable to be attacked on their merits by other creditors of defendant. Indeed, as a general rule, even accident, mistake, surprise, etc., as objections to a judgment, are matters to be set up only by the defendant. If he submits to them, it is nobody else's business. So far as I have been able to find cases of interference against a judgment, by others than the defendant, they are all for want of jurisdiction, or for fraud and collusion. And but a moment's consideration will show that this must be the proper rule. There never would be an end of litgations, if after the defendant has had his day in Court, and a judgment has been pronounced, every creditor shall have his day, also, and have the issues re-examined. Nor is there anything in the fact that the issue sought to be made is not, *nil debit*, payment, off-set, failure of consideration, etc., but illegality of consideration. The laws of this country and of England permit, but do not require, men to plead illegalities. It is, perhaps, true in morals, that all a man has he holds only in trust for his creditors, and a good man will doubtless act with this great moral principle before him. But the laws of

no country, that I am aware of, put him, in fact, so far in the power of his creditors, as that they may oversee his bargains and inquire into the propriety of them. He may pay usury if he pleases, or debts barred by the statute of limitations, or racing debts, or make a bad trade, or submit to a judgment, based on transactions of this character, without fraud upon his creditors in law. In a great many cases, it has been solemnly adjudged that the plea of usury is a personal privilege, and can only be taken advantage of by the debtor himself: Campbell *vs.* Johns, 4 Dana, 177; Fenner *vs.* Sayer, 3 Alabama, 458; Cook *vs.* Kornegy & Dyer, 3 *Ibid.*, 646; Speigler *vs.* Snap, 5 Leigh., 478; DeWolf *vs.* Johnson, 10 Wheaton, 367; Port *vs.* Dart, 8 Paige, 639; 2 Hill's (S. C.) Chancery, 474.

In this State this question has rarely arisen. Our Code, section 3538, provides that "creditors or *bona fide* purchasers may attack a judgment for any defect appearing on the face of the record, (so as to make it void and not merely irregular, section 3535,) or for fraud or collusion, whenever and wherever it interferes with their rights in law or equity." Nothing is here said about going behind a judgment and attacking it for illegality of the consideration, or want of consideration, and we apprehend no such thing was thought of. The case of *Solomon vs. Pope, in* 36 *Georgia,* was not the case of a judgment, but of a simple contract debt, and the circumstances were peculiar. There was a privity between all the parties. The debtor had sold his goods, and the purchaser had agreed to pay the purchase money to the creditors of the seller. Solomon was mentioned by name, the others generally. As the case was before the Court, Pope, one of the creditors, had garnisheed the purchaser, and he, Pope, knowing the terms on which the purchaser had bought, filed a bill to attack Solomon's debt on account of usury. Here was a fund belonging to an absconded debtor, in hand, none of the debts were in judgment, the fund had been, as the record was before the Court, appropriated by the debtor to the creditors. And this Court, on the idea, we suppose, that under the circumstances of the case

the principles of a trust or the usages of a Bankrupt Court were applicable, sustained the bill. The privity then existing, by reason of the written orders of the debtor, make that case stand on special circumstances. Otherwise it would be contrary to the uniform current of decisions, and a dangerous innovation on established principles.

What is the proper construction to be given to our Act of 1866, and to section 3903 of our Revised Code, we do not now decide. We are clear, that previously to that statute, equity would furnish no remedy for the complainant as he has made his case. If so, that statute will not authorize him to come into equity. Whatever remedy he has by that statute is under it and under the method it prescribes, and he gives in his bill no reason why that remedy cannot be used by him. Whether that statute gives him new rights, or whether it only authorizes him to do at law what, before, he might do in equity, to-wit: attack the mortgage or judgment for fraud or collusion, or for matter appearing on the face of the record, rendering it invalid, or whether it in truth opens the whole question upon the merits to reinvestigation at the demand of each creditor of the mortgagor, we do not determine. A Court of equity has no jurisdiction of the case made by the bill, and not having any authority over it, such a Court is not the proper tribunal to decide the question. We, therefore, simply affirm the judgment of Judge Hill, refusing the injunction— leaving the other questions open until they come up from a Court having jurisdiction.

Judgment affirmed.