## STONE v. GEORGIA LOAN AND TRUST COMPANY.

1. Under the decision of this court in *Harrold, Johnson & Co.* v. *Morgan*, 66 *Ga.* 398, which upon a review thereof is affirmed, a security-deed infected with usury does not, relatively to a judgment creditor of the grantor, pass title out of the latter; and this is so even though the judgment against him was not rendered until after the execution and delivery of such deed.
2. One who accepts from another a conveyance of land with notice of the fact that a third person has an equitable interest therein takes subject thereto.
3. The plaintiff in error is entitled to a new trial.

Argued March 21, — Decided July 20, 1899.

Levy and claim. Before Judge Reese. Taliaferro superior court. February term, 1898.

*Samuel H. Sibley,* for plaintiff.
*S. H. Hardeman* and *H. M. Holden,* for defendant.

LUMPKIN, P. J. In 1885 one Bacon bargained a tract of land in Taliaferro county to Stone for $3,000, the latter paying $1,500 in cash and taking a bond from Bacon conditioned to make title upon payment of the balance of the purchase-money. In 1889, with money borrowed from the Georgia Loan & Trust Company, for the use of which Stone contracted to pay interest amounting to more than 8 per cent. per annum, he discharged his debt to Bacon, took title to himself, and then conveyed the land to the company as security for his debt to it. The company took this conveyance without notice or knowledge that Mrs. Stone claimed any interest, legal or equitable, in the land. Afterwards, in 1895, Stone conveyed the land absolutely to the company, whose bond for title he had previously held, in full settlement of its claim against him. On the 6th day of October, 1897, an execution in favor of Mrs.

Stone against Stone was levied upon the premises. This execution was issued upon a judgment rendered on August 24 of that year, which purported to be not only a general judgment against Stone, but also one creating a special lien on the land in question. The company filed a claim, and upon the issue thus made a trial was had, resulting in a verdict for the claimant. Mrs. Stone by her bill of exceptions complains of the overruling of a motion for a new trial filed by her. She offered at the trial to prove that the $1,500 originally paid by Stone to Bacon as a part of the purchase-money of the land in dispute was her money which she had requested her husband to invest in land for the benefit of herself and her children; and further, that before the execution and delivery of Stone's second deed to the company, she had given notice to its agent of her equity in the land and of the facts upon which it was founded. She also in this connection tendered in evidence the record of the suit resulting in the judgment upon which her execution was based, from which it would have appeared that in her action against Stone she set up her equity in the property and obtained a judgment of the nature already described. The court rejected all of this evidence, holding that the same was irrelevant to the issue involved in the claim case. The judge, evidently, was of the opinion that Mrs. Stone was absolutely concluded by the conveyances from Stone to the company, and had no right to set up the contention that his first deed to it was void because infected with usury, or that his second deed to the company was void as to her because taken by it with notice of her equity.

1. Following the decision announced in *Harrold, Johnson & Co.* v. *Morgan*, 66 *Ga.* 398, we must hold that the court committed error. It was in that case distinctly ruled that the holder of a security-deed infected with usury could not base thereon a claim which would prevail over the lien of a judgment creditor, although his judgment was obtained long after the execution and delivery of the security-deed. The effect of that holding was to decide that such a security-deed was absolutely void as against a judgment creditor, and passed no title, legal or equitable. It necessarily follows from the doctrine there laid down, that the first deed from Stone to the company

presented no obstacle to the enforcement of Mrs. Stone's judgment lien upon the land.   The decision in 66 *Ga.* was predicated upon the idea that a judgment creditor of one who had made to another creditor a conveyance infected with usury was not such a stranger to the transaction as to be precluded from raising the question of usury.   We granted leave to review that decision, but after gravely considering the question whether, upon principle, it should be affirmed or overruled, we have concluded that we ought to allow it to stand.   To do otherwise would necessitate the repudiation of a doctrine which this court laid down in cases of much older date, and has in more recent cases recognized as correct.   In *Pope* v. *Solomon*, 36 *Ga.* 541, it was in substance held that as Pope, whose debtor (Williams) had paid to William Solomon, another creditor, certain sums of usury, was, under the facts appearing, entitled to payment of his demands out of the proceeds of Williams's property after the satisfaction of his indebtedness to Solomon, Pope had an equitable right to have Solomon's claim credited with the sums he had received as usury, and by thus reducing its amount deprive this claim, save only as to principal and lawful interest, of any priority over that of Pope.   It will thus be seen that this case went a considerable length in allowing a creditor to attack as usurious his debtor's transaction with another—much further, we may safely say, than it is necessary for us to go in upholding the decision in 66 *Ga.*   But be this as it may, the ruling in *Pope's* case was necessarily based upon the idea that the creditor was not to be regarded as a mere stranger.   It is inconsistent with any other view; and that this was the view entertained by the court is evidenced by the following, which we quote from the opinion of Chief Justice Warner on page 545: "But it is said, no one but the party who pays the usury can take advantage of it—that it is a *personal* privilege not extended to strangers.   As a general abstract proposition, it is true that a contract for usury can not be avoided by a *mere stranger* to the transaction.   But here the complainant is not a *mere stranger* having no interest in the result of this usurious transaction between Solomon and Williams; he is a creditor of Williams, claims under and through the latter to the extent of

his debt; *his interest is affected by the usurious contract,* and to the extent of that interest he is entitled to be heard in relation to it; there is a *legal privity* between the complainant and his insolvent debtor; he is interested in his insolvent debtor's *estate,* so far as the payment of his debt is concerned, and is not, therefore, an officious interloper. Dix *vs.* Van Wyck, 2d Hill's N. Y. Rep. 522; Post *vs.* Dart, 8th Paige's Ch. Rep. 639."

The *Pope* case has been several times cited by this court, and though it has in two instances declined to give its full sanction to the application which the court therein made of the rule as to privity between creditor and debtor, it has never, so far as we have been able to ascertain, distinctly said that the doctrine embraced in the words above quoted was unsound. On the contrary, this court has many times treated it as correct. Thus, in *Phillips* v. *Walker,* 48 *Ga.* 55, it was held that a creditor could not attack as usurious a common-law judgment in favor of another creditor against their common debtor; and Judge Trippe, after remarking that the court was not disposed to carry the doctrine of the *Pope* case to the extent asked for in the case then under consideration, said: "We by no means impeach that decision." Page 58. The decision in *Gatewood* v. *City Bank of Macon,* 49 *Ga.* 45, is to the same effect. In that case Judge McCay said (page 48): "In 2 Hill (S. C.) Chancery Reports, 474, the chancellor says that a case is not to be found in the books of an interference by chancery with a judgment at law, obtained in the usual mode, under pleadings and notice, on the ground of usury in the original contract. That contract has been merged into the judgment, which imports absolute verity; and it is conclusively presumed that the parties made all the defenses allowed by law, and that the judgment is the conclusion of law on the true facts of the transaction." But, in speaking of the relation of the complainant to his debtor, who was the defendant in the judgment which the former sought to attack for usury, the eminent judge also said (page 49): "He is clearly a privy of the defendant; his only interest in the matter is, that the defendant is his debtor. He comes into the controversy through the defendant, and it would entirely upset the whole doctrine of the

conclusiveness of judgments, if they were liable to be attacked on their merits by other creditors of defendant." The language last quoted shows that though this particular creditor was, for the reason stated, denied the relief for which he prayed, he was nevertheless treated as a privy of his debtor. In this case the *Pope* case is referred to, and as to it the judge remarked that "the circumstances were peculiar"; and, after stating the manner in which the privity between the creditor Pope and his debtor, Williams, arose, observed that it made that case "stand on special circumstances. Otherwise, it would be contrary to the uniform current of decisions, and a dangerous innovation on established principles" (page 51). Clearly this criticism does not militate against the idea that a creditor, relatively to a transaction of his debtor injuriously affecting the former's interests, is not a stranger. In *Lilienthal* v. *Champion*, 58 *Ga.* 163, Judge Jackson said: "In *Pope* v. *Solomon et al.*, 36 *Ga.* 541, on the 545th page Judge Warner goes into the doctrine fully, and the court ruled that a creditor is not such a stranger that he can not set up the usury." He also cited *Scofield* v. *McNaught*, 52 *Ga.* 69, as reasserting and enforcing "the principle in 36 *Ga.* 541."

We can not reconcile the decision in *Singleton, Hunt & Co.* v. *Patillo*, 78 *Ga.* 269, with that in *Pope's* case, nor accept as accurate a statement made by Justice Blandford in endeavoring to distinguish these cases. Referring to the case in 36 *Ga.*, he said, "in that case, it will be observed that usury had not been paid." On the contrary, as stated above, the usury had been paid, and it was held that Pope was entitled to have an account taken of it and to have the amount, when ascertained, credited upon the principal and lawful interest of Solomon's claim. It was exactly this sort of relief for which Singleton, Hunt & Co. prayed in their case. The conflict in these cases is not, however, material to the present discussion, and our purpose in mentioning the case in 78 *Ga.* was simply to show that though the *Pope* case was there cited, nothing conflicting with the ruling in 36 *Ga.* upon the question of "privity" between creditor and debtor was decided. In *Brooks* v. *Todd*, 79 *Ga.* 692, it appeared that certain land had been sold by a receiver

who had been appointed in a proceeding for partition instituted by Mrs. Tuggle against Mrs. Awtry and others. It was conceded that one half of the money should be paid to Mrs. Tuggle, but there was a controversy between Lemuel Brooks and William H. Todd, who were parties to the case, over the other half, to which Mrs. Awtry made no claim. Brooks claimed under a security-deed from her, which was tainted with usury. Todd claimed under a mortgage from her, also infected with usury, covering the same property, which he had accepted as a "second mortgage to the claim of Lemuel Brooks, or at least subject to his rights and claims." It does not appear that either had obtained a judgment against Mrs. Awtry. The trial court awarded the entire fund to Todd, on the ground that the deed held by Brooks was void for usury. This was held to be erroneous because Todd having accepted his mortgage subject not merely to the "security" afforded by the deed held by Brooks, but also to his "rights and claims," and it being his right to collect principal and lawful interest, he was entitled, as against Todd, to recover the same. But this court distinctly held that Todd had the right to raise the question of usury so as to prevent the payment to Brooks of any sum in excess of the amount lawfully due to him. On this point the present Chief Justice said: "It was contended by counsel for Brooks that the plea of usury was a personal plea, and that as long as Mrs. Awtry had not pleaded it, Todd could not do it for her. We recognize that to be the abstract rule of law; but where the debtor is insolvent and there is a fund in court to be distributed, equity will allow one creditor to suggest usury as to another creditor, and if the debtor is insolvent, will compel the usurious creditor to write off his usury and only receive his principal and legal interest. In this case, Todd having an interest in the fund and the fund not being enough to pay both, Todd's interest is affected by the usurious contract, and to the extent of that interest he is entitled to be heard in relation to it. If Mrs. Awtry is insolvent, as said before, Todd has an interest in this fund, 'so far as the payment of his debt is concerned, and is not, therefore, an officious interloper.' *Pope* v. *Solomon et al.*, 36 *Ga.* 541. We hold, therefore, that if Mrs. Awtry is insolv-

ent, Todd has the right in equity to show to the court the usury in Brooks's debt, and to compel him to receive only his principal and legal interest." Pages 695, 696. See, also, in this connection, *Weihl* v. *Furniture Co.*, 89 *Ga.* 297, and *Burgwyn Tobacco Co.* v. *Bentley*, 90 *Ga.* 518–519.

In *Zellner* v. *Mobley*, 84 *Ga.* 746, it was said that third persons who had no interest in the transaction under investigation had no right to invoke against the usurer the statute making void titles infected with usury, and that the plea of usury was a personal one which no one could make but the borrower and his privies. There are, in *Scott* v. *Williams*, 100 *Ga.* 540, expressions to the same effect; and doubtless other cases decided by this court lay down the rule that a mere stranger has no right to attack an instrument purporting to convey title, as being void for usury. The question now before us therefore resolves itself into this: Is a creditor of a party who makes a conveyance tainted with usury a privy or a stranger? We have shown that this court has frequently classed creditors as privies of their debtors; and while we do not venture to assert positively that there is nothing to the contrary in any of its opinions, we have not found nor has our attention been called to any case in which it was decided that a creditor, relatively to the question of his attacking on the ground of usury a conveyance executed by his debtor, was not a privy. Even a decision so holding, if made after that in 36 *Ga.*, would not prevail over it. How, then, stands the question of overruling the decision in 66 *Ga.*? It has stood unchallenged for nearly twenty years, and the principle on which it rests, viz., that of privity between creditor and debtor, has been recognized by this court for nearly thirty-two years. In view of these facts, we should in any event be well convinced both of its erroneousness and hurtfulness as a part of our system of usury laws, before undertaking, at this late date, to strike it down. We are not so convinced; and even if we were, it may now be most seriously doubted that we have the power to overrule the decision in 66 *Ga.* The principle upon which it is based, laid down by this court for the first time in 36 *Ga.*, is now embodied in the following language in section 2878 of our Civil Code: "The

plea of usury is personal; but a creditor has no right to collect usurious interest from an insolvent debtor to the prejudice of other creditors." This section, by reason of the adoption by the General Assembly of the code, has the force and effect of a statute. *Central of Georgia Ry. Co.* v. *State of Georgia*, 104 *Ga.* 831. We have no power to repeal, amend, or modify a statute.

2. With the first deed from Stone to the company out of Mrs. Stone's way, the question then arises: Did the second deed present an insuperable obstacle to the levy of her execution upon the land? In this connection, it was argued by counsel for the company that by the making of this second conveyance the usury was purged out of the original transaction. As between Stone and the company, this is undoubtedly correct; but assuming as true what Mrs. Stone offered to prove, the second deed to the company could not have the effect of defeating her equity, for the reason that this conveyance was taken by it with full notice that she had an equitable interest in the property. In other words, if Mrs. Stone had established the facts she sought to prove, it would have appeared that the company was not, as to this second deed, an innocent purchaser without notice. See *Lewis* v. *Equitable Mortgage Co.*, 94 *Ga.* 573 (3). Treating Stone's first deed to it as void for usury, it never became a purchaser or acquired any title whatever until it obtained the second conveyance from him; and if it took this latter deed with notice of Mrs. Stone's equity, it simply stands as any other person would do who bought land with notice that a third person, though not the holder of the legal title, nevertheless had an equitable interest in the property. In the present instance, it would seem that the alleged right of the company to hold this land as against the enforcement of Mrs. Stone's judgment lien is not supported even by the circumstance that it parted with anything of value at the time it took the second deed. Relatively to her, it had at that time a debt which was not secured at all; and this being so, surely it could not protect itself merely by taking a deed to the property, the consideration of which was an antecedent unsecured debt, when it knew that the land was in part paid for with her money, and therefore was bound

to know also that she had an undoubted right to assert her equitable rights in the premises.

3. It follows, as a necessary conclusion from the above, that there ought to be a new trial of this case. If, upon another hearing, Mrs. Stone is able to establish to the satisfaction of the jury the facts she was not permitted to prove at the last trial, the result should be a judgment ,finding the property subject to her execution. There is no force in the argument presented by counsel for the company that she elected to treat her claim against her husband as a mere 'debt, and therefore stands in the position of an ordinary judgment creditor seeking to enforce a lien against a defendant in execution who had legally parted with all title to the property before judgment was obtained. She does not occupy the position of an ordinary judgment creditor, for the record of her suit against her husband would show that it was brought for the distinct purpose of establishing her equitable right to collect her money out of the proceeds of this very land, and that her action resulted in a judgment sustaining her alleged claim and creating a special lien on the property. The form of her action is immaterial. Its purpose was to trace and recover trust funds. It makes no difference that she did not specifically pray for a sale of the property and that from the proceeds of the sale her money, with interest thereon, be returned to her. The identical result would be accomplished by an enforcement of the judgment which she actually obtained.

*Judgment reversed. All the Justices concurring.*