---

HAWES, trustee, *v.* GLOVER.

1. Since the passage of the act of September 26, 1883 (Acts 1882-3, p. 104, Civil Code, § 3782), the statute of limitations, relatively to the debts of a decedent, is suspended during the period of time between his death and representation upon his estate, if such period does not exceed five years. Whether the decision in *Johnson* v. *Johnson,* 80 *Ga.* 260, was rendered in view of this act can not be definitely determined, as the act was not referred to by the court. If it was so rendered, the ruling there made would go no further than holding that this act was not applicable to a case in which the period of time between the death of a debtor and representation taken upon his estate had completely expired before it was passed. In the present case even the debt itself, sought to be enforced against the estate of the decedent, was created long after

the act of 1883 was passed, and the time between the death of the debtor and representation upon her estate was clearly covered by it. Consequently, in holding that the statute of limitations, relatively to this debt was suspended while the estate of the deceased debtor was unrepresented, we have not found it necessary to overrule the decision in *Johnson* v. *Johnson,* supra.

2. Where one of the joint obligors upon a promissory note gives a mortgage to secure its payment, and, after his death, the holder of the note and mortgage institutes a proceeding in the nature of a foreclosure of the mortgage, a surviving co-obligor upon the note is a competent witness, in such proceeding, to prove the execution of such mortgage, if, at the time he testifies, the note as to him has become barred by the statute of limitations.

3. Where a husband signs his wife's name to a mortgage purporting to be executed by her, in her immediate presence and by her express request and direction, the effect of such signature is the same as if she had signed the mortgage herself.

4. A seal is not necessary to the validity of a mortgage, even upon real estate; and a mortgage is valid, as between the parties thereto, without any attesting witness and without being recorded.

5. As the plea of coverture is a personal privilege, available only to the feme covert or her privies in blood or estate, a mere creditor of a married woman, even in case of her insolvency, can not attack a mortgage executed by her, upon the ground that it was given to secure the debt of her husband and son.

6. Section 2727 of the Civil Code, which provides that an unrecorded mortgage is "postponed to all other liens created or obtained prior to the actual record of the mortgage," refers only to liens created or obtained during the lifetime of the mortgagor.

Argued February 23,—Decided August 17, 1906.

Money rule.  Before Judge Lewis.  Jones superior court.  April 17, 1905.

Mrs. Joanna Hawes, as trustee for herself and her children, obtained a judgment against W. J. McMichael as administrator of the estate of Mrs. Emily J. McMichael.  The judgment was special as to certain described lands and general as to the other property of the decedent.  The execution issuing from this judgment was partially satisfied by the sale thereunder of the lands covered by the special lien; and was then levied upon a lot of land in Jones county, which was the property of the estate of the defendant in execution.  This lot of land was advertised for sale, under the levy, by the sheriff of the county; whereupon Mrs. S. M. Glover gave notice that she claimed a mortgage lien upon it.  An agreement was then entered into, between the judgment creditor, the mort-

gagee, and the administrator, providing for the sale of the entire interest in the land by the sheriff, under the execution, and that the plaintiff in fi. fa. and Mrs. Glover, who claimed the mortgage lien, should file their respective petitions, in the nature of a money rule, against the sheriff, setting up their respective claims against the fund realized by the sale, and have the question as to who held the superior lien upon the proceeds of the sale determined by a verdict and judgment in the superior court, reserving to each the right to attack the validity of the lien claimed by the other. The land was accordingly sold by the sheriff; the parties filed their respective petitions, claiming the fund; the sheriff answered; and it appeared that the fund in his hands was not sufficient to satisfy the claim of either of the contesting creditors. Upon the trial of the issue thus formed, Mrs. Hawes, trustee, introduced her execution, and it was admitted that the land levied upon and sold thereunder was a part of the estate of Emily J. McMichael, in the hands of her administrator, W. J. McMichael, and that the funds in controversy were derived from the sheriff's sale of the same. It was further admitted that the judgment in favor of Mrs. Hawes, trustee, was based upon notes of Mrs. E. J. McMichael. Mrs. Glover introduced W. J. McMichael as a witness, for the purpose of proving the execution of the mortgage claimed by her by Mrs. E. J. Mc-Michael. The witness, who testified that Mrs. E. J. McMichael was his wife, was handed a written instrument, in the form of a promissory note and a mortgage upon the land in question to secure the payment of the same, as follows: "December 18, 1894. On or before the first day of December, 1895, and 1896, I promise to pay to Mrs. S. M. Glover, or order, seven hundred dollars," etc. Then followed waiver of homestead and the mortgage in question. It concluded as follows:

"In testimony whereof I have hereunto set my hand and seal the day and year above written.

[Signed] E. J. McMichael, W. J. McMichael, J. S. McMichael. "Signed, sealed and delivered in the presence of:

"Witness as to the signature of J. S. McMichael: J. S. Stewart, H. T. Powell, Notary Public, Bibb Co., Ga."

Endorsed upon it was an entry by the clerk of the superior court of Jones county, that it had been recorded on a named date, which was long prior to the date of the judgment in favor of Mrs. Hawes,

trustee. But the attempt to record it had been made without any probate of the mortgage whatever. When the witness was asked to state whether he signed Mrs. E. J. McMichael's name to this instrument at her request, the question and the answer sought to be thereby elicited were objected to upon the following grounds: (*a*) Because, under the evidence act (Civil Code, § 5269), the witness was not competent to testify as to any transaction with his deceased wife. (*b*) Because it appeared that the witness and Mrs. E. J. McMichael were joint obligors on the paper, and, under the provisions of the act approved December 21, 1897 (Acts 1897, p. 53), the witness, being the administrator of the estate of Mrs. E. J. McMichael and a co-obligor on the note, should not be permitted to testify to any matter that would relieve or modify his own liability on the note and tend to make the estate of Mrs. McMichael primarily liable thereon. (*c*) Because the authority to execute a mortgage on real estate must itself be executed with all the formality required in the case of a mortgage, and the witness should not be allowed to testify to a verbal authority given to him by Mrs. McMichael. The court overruled the objection, and the witness testified: "E. J. McMichael was my wife. I signed her name to that paper by her verbal request, under her direction, and in her presence. The estate of Mrs. Emily J. McMichael is insolvent."

When the mortgage was offered in evidence, it was objected to upon the grounds, that there were no subscribing witnesses to the signature of Mrs. McMichael; that it was not a sealed instrument, and that it had never been recorded. These objections were overruled and the mortgage admitted in evidence. While W. J. McMichael was on the stand as a witness, counsel for Mrs. Hawes, trustee, upon cross-examination, asked him "if the paper offered by Mrs. Glover as a mortgage was not a security obligation on the part of Mrs. E. J. McMichael, and if [she] was not as to said obligation a surety for her husband, W. J. McMichael, and her son, J. S. McMichael." This question was objected to, upon the ground that the plea of coverture was a personal one and could not be urged by the plaintiff in fi. fa. Counsel propounding the question stated to the court that he expected to prove by the witness that Mrs. McMichael, being a married woman, signed the mortgage as surety for her husband and her son, and that this fact was known to Mrs. Glover. The court sustained the objection and refused to

permit the witness to answer the question. After the conclusion of the evidence, the court, on motion of counsel for Mrs. Glover, directed the jury to return a verdict finding that the fund in dispute should be applied toward the satisfaction of the mortgage held by Mrs. Glover; and upon such verdict being rendered, judgment was entered in accordance therewith. Mrs. Hawes, trustee, thereupon sued out a bill of exceptions, assigning error upon each of the foregoing rulings.

   *Hall & Wimberly* and *J. E. Hall,* for plaintiff in error.

   *John R. L. Smith,* contra.

   COBB, P. J.   1. Counsel for plaintiff in error do not contend in their brief that the debt claimed by Mrs. Glover against the estate of Mrs. McMichael was barred by the statute of limitations, nor does it appear that this contention was made in the trial court. But counsel for defendant in error has discussed the question whether this debt was thus barred, contending that it was not, and has asked and obtained leave to review the decision of this court rendered in *Johnson* v. *Johnson,* 80 *Ga.* 260, evidently being apprehensive that if that decision should be followed in the present case, the judgment of this court might be adverse to his client. Even admitting that the note held by Mrs. Glover, which the mortgage was given to secure, fell due on December 1, 1895, it was not, relatively to the estate of Mrs. McMichael, barred by the statute of limitations. As shown by the evidence, Mrs. McMichael died on April 29, 1897, and there was no administration upon her estate until August 7, 1899. During the period of time between these two dates the statute of limitations, relatively to claims against her estate, was suspended. Civil Code, § 3782; Acts 1882-3, p. 104. It was, of course, still further suspended for twelve months after the appointment of the administrator. Civil Code, §§ 3421, 3423; *Smith* v. *Hudspeth,* 63 *Ga.* 212; *Pendleton* v. *Andrews,* 70 *Ga.* 306; *Johnson* v. *Johnson,* supra; *Adams* v. *Adams,* 113 *Ga.* 824; *Williams* v. *Lancaster,* Ib. 1020; *Tarver* v. *Cowart,* 5 *Ga.* 66. Mrs. Glover took the initial steps toward the enforcement of her mortgage on August 24, 1903, when she, after giving notice of her mortgage upon the land, became a party to the agreement under which the entire interest in the land was sold under the execution in favor of Mrs. Hawes, trustee; and on September 16, 1903, she filed her petition setting up

her mortgage and claiming thereunder the funds in the hands of the sheriff arising from this sale. Taking either of these dates as the time when the statute of limitations finally ceased to run in favor of the estate of Mrs. McMichael against the claim of Mrs. Glover, it is very clear that such claim was not barred, as the statute had not run against it for the period of six years, which is applicable to promissory notes not under seal. In *Johnson* v. *Johnson,* supra, which counsel for defendant in error obtained leave to review, it was held that the statute of limitations was not suspended during the time that the estate of a deceased debtor was unrepresented. That decision simply followed the one rendered in *Pendleton* v. *Andrews,* 70 *Ga.* 306, in which it was held that section 2829 of the Code of 1882 (now section 3781 of the Civil Code) could not "be invoked by a creditor whose debtor dies, in order to prevent the statute of limitations from running;" as "That section provides for the suspension of the statute for five years when the creditor dies, and his estate is unrepresented; but does not suspend the statute in favor of one who holds a claim against" the unrepresented estate of a decedent. The decision in *Pendleton* v. *Andrews* was rendered on April 24, 1883, and at the first session of the legislature thereafter the act of September 26, 1883, was passed, which provided that, from and after its passage, "The time between the death of a person and representation taken upon his estate, or between the termination of one administration and the commencement of another, shall not be counted against creditors of his estate, provided such time does not exceed five years." This made the rule which theretofore had been applicable only to creditor estates likewise applicable to debtor estates. That act counsel for defendant in error seems to think was overlooked when the decision in *Johnson* v. *Johnson,* supra, was rendered. When that decision was rendered the act of 1883 had not been codified, and in the opinion in the case, delivered by Chief Justice Bleckley, it is not referred to. Whether the court had it in view when that case was decided can not be definitely determined. The cause of action with which the court was then dealing lacked but sixteen days of being barred by the statute of limitations when the act of 1883 was passed; and, assuming, as the court did, that the persons sued were rightful executors, the time between the death of the debtor and representation upon her estate had expired when that statute was

enacted. So, if the decision was made in view of the act of 1883, the ruling there made would go no further than holding that that act was not applicable to a case where the time between the death of a debtor and representation taken upon his estate had completely expired before that act was passed. This is not at all in conflict with the ruling which we make in the present case; for here even the debt itself was created long after the act of 1883 was passed, and of course the statute of limitations, relatively to such debt, had not even begun to run until many years after that statute was enacted, so that the period between the death of the debtor and representation upon her estate was clearly covered by the statute in question. There is, therefore, no necessity, in the present case, for overruling the decision in the one which we have been asked to review, in order to reach the ruling which we now make.

2. Section 5269 of the Civil Code, which is relied upon by plaintiff in error to exclude the testimony of W. J. McMichael as to the execution of the note and mortgage by Mrs. E. J. McMichael, is as follows: "Where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." Relatively to the question of the liability of the witness upon the note, he was competent to testify to its execution by his deceased co-obligor thereon, because at the time he testified he was no longer legally liable upon the note. Although the body of the note concluded with the expression, "Witness my hand and seal," it was not, as to any of its makers, a sealed instrument, as no seal, or anything intended to take the place of one, appeared thereon after the signature of any one of them. *Ridley v. Hightower*, 112 *Ga.* 476, and cases cited; *Jackson v. Railroad Company*, 125 *Ga.* 801. It was certainly matured on December 1, 1896. The trial under review occurred in 1905, at the April term of the court. As the note was not under seal, it was clearly barred as to this witness when he testified in the case; for it is not claimed that any suit had ever been brought against him upon it, but the question as to his competency was based solely upon the facts which appeared upon the face of the paper. The mere fact that it was not barred as to the estate of Mrs. McMichael, his co-obligor thereon, did not prevent its being barred as to him. In *Shepherd v. Crawford,* 71 *Ga.* 458, it was held: "Where a client

brought suit against the representative of his deceased attorney, for money collected by such attorney and not accounted for, if the claim against the original debtor was barred by the statute of limitations, so that no recovery could be had against him in case of failure to recover against the attorney's estate, he would be a competent witness to prove that he had paid the amount of the claim to the deceased attorney." In the opinion Mr. Justice Hall, in discussing the question whether the trial court was right in permitting the original debtor to testify that he had paid the amount of the claim against him to the plaintiffs' attorney, who was then dead and against whose estate the suit was proceeding, said: "Was the court right in admitting Gilliam's testimony, over the defendant's objection? This depends upon the further fact of Gilliam's liability to the plaintiffs, in the event of their failure to recover against Crawford's executor? If he would have been liable over to them in that event, when he testified, as Crawford was dead, then, under the decision of this court at the present term, in the case of *Daniel* vs. *Burts,* he was incompetent to testify. But it is apparent from the record in this case that the plaintiffs' right to the claim that had been given Crawford for collection was then barred by the statute of limitations. Even at common law this would render a witness competent, who would, without it, be excluded. 23 *Ga. R.* 257. In *Flournoy & Epping* vs. *Wooten, administrator,* and *Wooten, adm'r,* vs. *Flournoy & Epping,* this court, at its present term, held that a witness competent to testify at common law was not rendered incompetent by reason of the exception contained in the evidence act of 1866 (Code, § 3854, par. 1), relative to parties to the suit or contract, etc., where the opposite party was dead." In the *Flournoy & Epping* cases, 71 *Ga.* 168, which are here cited by Mr. Justice Hall, it was held: "The act of 1866 (Code, § 3854) was not intended to exclude any one from testifying who was competent as a witness by the law as it stood at the time of its passage, but did intend to make all persons competent as witnesses except those who fell within the exceptions to the act." And in the case in 23 *Ga.* 257 (*Leverett* v. *Stegall*), cited by him, it was held: "A witness, whose interest is uncertain, and who is protected against recovery, by the statute of limitations, is a competent witness." But while, as we have seen, the witness in the present case can not be held to have been incompetent by reason of any liability upon

his part upon the contract evidenced by the note, he was nevertheless interested in the result of the suit.   He was thus interested, because if the amount of the note should be collected from the estate of his deceased joint obligor, he, judging from the face of the note, would be liable, upon an implied contract, to her estate, to contribute his proportionate share of the amount which was required to pay the debt.   *Sherling* v. *Long,* 122 *Ga.* 797.   The fact that his liability upon the note was barred by the statute of limitations would not prevent his being liable upon such implied contract to the estate of his deceased co-obligor, for his proportionate share of the debt; for the cause of action in behalf of such estate against him for contribution would not arise until the payment by it of the debt evidenced by the note, and then only would the statute begin to run as against such cause of action.   Ib.   It will be seen, however, that while the witness was thus interested in the result of the suit, his testimony was directly opposed to his interest; for in establishing, by his testimony, the claim of Mrs. Glover against the estate of Mrs. McMichael, he was laying the foundation for a possible future liability upon his part to such estate.   When he took the stand as a witness, he stood protected by the statute of limitations against a suit upon the note by Mrs. Glover, but his testifying to the execution of the note by his joint obligor, Mrs. McMichael, tended to render her estate liable for its payment, and to render himself liable over to such estate for contribution, in the event it was forced to pay the debt.   As we have seen, the section of the Civil Code invoked for the purpose of excluding the testimony of the witness provides that a person who is not a party to the case on trial, but who is interested in the result of the suit, "shall not be competent to testify, if as a party to the cause he would for any cause be incompetent."   As a party to the cause, the witness would not have been incompetent to testify as he did, for he was testifying against his own interest.   Even before the passage of the evidence act of 1866, removing, with certain exceptions, the incapacity, which existed at common law, of parties and persons interested in the result of the litigation to testify in the case, it was held that a witness, although interested in the result of the suit, was competent when testifying against his own interest. *Molyneaux* v. *Collier,* 13 *Ga.* 406; *Brown* v. *Burke,* 22 *Ga.* 574. We have already seen that this court has held that the evidence

act of 1866 "was not intended to exclude any one from testifying who was competent as a witness by the law as it stood at the time of its passage." Since the passage of that act, it was held in *Lasseler* v. *Simpson,* 78 *Ga.* 61, that "The surviving party to a contract, who is not a party to the record, is generally competent to testify against his interest, or where his interest is equally balanced." In *Reed* v. *Baldwin,* 102 *Ga.* 80, the court held a surviving party to a contract competent to testify against his own interest, even when he was a party to the record. The headnote in that case is as follows: "Where the executors of the deceased payee of a promissory note bring suit thereon against a husband and wife who signed it as joint makers, and the wife files a plea that the debt was her husband's and that she is not bound therefor, the husband is a competent witness, under the evidence act (Civil Code, § 5269), in support of the plea of the wife. The testimony thus offered is not in favor of the party testifying." In the opinion Chief Justice Simmons emphasizes the language of the evidence act which shows that when a suit is instituted or defended by the personal representative of a deceased person, the opposite party is only incompetent "to testify *in his own favor* against the deceased person as to transactions or communications with such deceased person;" and "that where a suit is instituted or defended by partners, persons jointly liable or interested, *the opposite party*" is simply rendered incompetent "to testify *in his own favor* as to transactions or communications solely with the deceased partner, or person jointly liable or interested." It is clear, therefore, that if the witness, W. J. McMichael, had been individually a party to the case, he would not have been incompetent to testify against his own interest. As he would not, as a party to the cause, have been incompetent to thus testify, it necessarily follows that he, as a person not a party, but interested in the result of the suit, was not incompetent to testify against his own interest.

It is further contended, however, that the witness was incompetent under the act of December 21, 1897 (Acts 1897, p. 53). That act provides, "That when suit is instituted against joint defendants, one of whom is the representative of an insane or deceased person, the sane or living party defendant shall not be permitted to testify as to any transaction or communication with the insane or deceased party, when his evidence would tend to relieve or

modify the liability of the party offered as a witness and tend to make the estate of the insane or deceased party primarily liable for the debt or default." We are unable to see how the witness was incompetent under the provisions of this act. The case in which he testified was not a suit against joint defendants, nor was he a party defendant thereto. The act of 1897 simply extended the exceptions, contained in the act of 1889 and subsequent acts, to the general rule of competency of witnesses provided by the evidence act of 1866; and as was said by Mr. Justice Candler in *Hendrick* v. *Daniel,* 119 *Ga.* 360, "This court is thoroughly committed to the proposition that the act of 1889 and the subsequent acts amendatory thereof, the provisions of which are embodied in the Civil Code, § 5269, are to be literally construed, and nothing will be added to or taken from them by judicial construction." Besides, even if, under the act of 1897, the witness would otherwise be incompetent, we have seen that the bar of the statute of limitations as to him would remove his disqualification and render him competent.

2. The objection to the testimony of the witness, that he signed the name of his wife, Mrs. E. J. McMichael, to the note and mortgage, by her request, under her direction and in her presence, upon the ground that authority to execute the mortgage could not be conferred by parol, but would have to be executed with all the formalities required in the execution of the mortgage itself, was properly overruled by the court. In *Reinhart* v. *Miller,* 22 *Ga.* 402, it was held: "When a party present, and an instrument is presented for his signature, directs another to sign it, no written authority is necessary, and if the instrument is signed and the parties immediately recognize it by acting upon it, no proof of the presence of the party when the instrument is signed need be made." In *Brown* v. *Colquitt,* 73 *Ga.* 59, 62, it was said: "A deed may be signed, sealed, and delivered by a person under instructions by parol, if the grantor be present at the time, and it will be good to pass title, because the law considers, under such circumstances, the act of the agent to be the act of the principal; it is done at his instance and under his directions, it is his act." In *Wyatt* v. *Walton Guano Co.,* 114 *Ga.* 375, it was held: "Where a husband, in the presence of his wife and with her express consent, signs her name to a promissory note which she knows is to be delivered to

the payee in settlement of an existing indebtedness for which she is individually liable, and such note is delivered in the cancellation of the indebtedness, the mere fact that she remarked to her hus-band, at the time of authorizing him to sign the paper: 'You may sign my name to it, but I will have nothing to do with it,' the same not being heard or communicated to the payee, does not re-lieve her from liability on the note." Counsel for the plaintiff in error invoke and rely upon the statute of frauds, and contend that the execution of the mortgage on realty in this State must comply with its provisions "as contained in section 2693, par. 4," of the Civil Code, which requires that "any contract for the sale of lands, or any interest in or concerning them," shall "be in writing, signed by the party to be charged therewith, or some person by him law-fully authorized." It is utterly immaterial here whether this pro-vision of the statute embraces a mortgage upon real estate or not; for it is obvious that when it is held that a contract is, in contem-plation of law, signed by a party when his name is signed thereto by another, in his presence and by his direction, there is no room for the contention that such a mortgage, so signed, is invalid un-der the statute of frauds. Counsel admit that this court "has de-cided the point as regards a deed or marriage agreement, in the case of *Reinhart* v. *Miller,* 22 *Ga.* 402;" but they insist that "The deed there, however, was nothing more than a bill of sale to per-sonalty, the subject-matter being slaves;" and that "All said in the decision further than was necessary to pass upon the question as one respecting a bill of sale to personalty was obiter." We do not agree with counsel in the construction which they place upon the instrument dealt with in that case, nor in the criticism which they make upon the opinion of the court therein. The instrument which was there under consideration was undoubtedly "an agree-ment made in consideration of marriage," which the law required then, and requires now, to be in writing. Cobb's Dig. 1127; *Brad-ley* v. *Saddler,* 54 *Ga.* 681; Civil Code, § 2693 (4).

3. A mortgage is good as between the parties without any attest-ing witness. *Marable* v. *Mayer,* 78 *Ga.* 60. So is a deed. *Johnson* v. *Jones,* 87 *Ga.* 85; *Howard* v. *Russell,* 104 *Ga.* 230. And a mort-gage, not attested as the law requires, is good as against third per-sons who take with actual notice of its existence. *Gardner* v. *Moore,* 51 *Ga.* 269. The requirements of the code as to the at-

testation of mortgages have reference to the registry laws, and' must be complied with in order to entitle the instrument to record. A seal is not necessary in order to render a mortgage valid. Civil Code, § 2724. As said by McCay, J., in *Nichols* v. *Hampton,* 46 *Ga.* 256, "our code requires no specified form to constitute a mortgage. It conveys no title, and is not required to be under seal. It is sufficient if it specifies the property, states the debt and shows that the parties intend to create a lien." A mortgage is perfectly valid as between the parties thereto, though never recorded. *Hardaway* v. *Semmes,* 24 *Ga.* 305; *Gardner* v. *Moore,* 51 *Ga.* 268; *Myers* v. *Picquet,* 61 *Ga.* 260; Civil Code, § 2727. If it is not recorded, or, as in this case, is illegally recorded, the only effect is to postpone it to purchases made, or liens procured by contract, without notice of its existence, or to liens obtained by operation of law. It follows that the mortgage, upon proof of its execution, was admissible in evidence.

4. The Civil Code, § 2488, provides, that "while the wife may contract, she can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband, in extinguishment of his debts, shall be absolutely void." In construing this section, it has been repeatedly held that any contract of suretyship entered into by a married woman, whether in behalf of her husband or any other person, is void, and at her instance will be so declared. But the question whether a creditor of hers can raise the question of the validity of such a contract entered into by her, when, because of her insolvency and the existence of some lien or conveyance which she has executed in connection with the contract, it tends to prevent the collection of his debt against her, has never, so far as we have been able to discover, been before this court. In *Palmer* v. *Smith,* 88 *Ga.* 84, it was held: "A conveyance of land executed by a married woman in payment of her husband's debt, though declared by the statute absolutely void, is only so as against her and upon her election to treat it as void, coverture being a personal privilege which is not available in behalf of a stranger to her title." In the opinion Mr. Justice Simmons said: "Where a married woman having a separate estate conveys her property to a third person in payment of her husband's debts, and afterwards seeks to recover the property or cancel the deed, the

deed will be declared void, on her motion, as against all persons who had notice that it was made for such purpose. But where she has conveyed her separate estate, in payment of her husband's debts, to one party, and another party is in possession of the property who is not in privity with her in blood or estate, and is sued therefor by the vendee of the wife, the defendant can not set up in his defense that the deed is void because made in payment of the husband's debts. This plea of the wife is a personal privilege, confined to her or her privies; and if she or they do not set it up, no stranger has the right to do so." This decision, or principle, would seem to be directly in point here, notwithstanding the fact that there it was not shown that the defendant, who sought to invalidate the married woman's deed, was a creditor of hers. The decision, in principle, seems to be directly in point, because it is based upon the principle that the plea of coverture is not available except to the wife herself and her privies in blood or estate, and we fail to see how a mere creditor can be a privy in estate to his debtor. We say this in full view of the decisions of this court, rendered in cases involving the right of a creditor of an insolvent debtor to raise the question of usury relatively to transactions between such debtor and another creditor; and we frankly admit the force of the argument of counsel for plaintiff in error, based on the strong analogy in principle between some of those cases and the present one. The theory, or principle, that there exists a legal privity between a creditor and his debtor, of which one creditor of an insolvent debtor can avail himself for the purpose of raising the question of usury as to the claim of another creditor against such debtor, was first announced by this court in *Pope* v. *Solomon, 36 Ga.* 541, the decision in which, though sometimes criticised, has been followed in a number of subsequent cases wherein the question of usury was involved. It is to be noted, however, that it was not held in that case that a creditor is a privy in estate to his debtor. The holding there was simply that there was a sufficient "legal privity" between a creditor and his debtor to authorize one creditor of an insolvent debtor, for his own protection, to raise the question of usury as to transactions between such debtor and another creditor holding a claim against him, which claim, under the circumstances of the particular case, had priority relatively to the funds in controversy of the common debtor, in order to reduce such prior claim by the

amount of usury which the debtor had paid thereon. The term "privy in estate" was not once used by the court in dealing with the case. Of that case McCay, J., in delivering the opinion of the court in *Gatewood* v. *City Bank,* 49 *Ga.* 45, 50, said, that "the circumstances were peculiar. There was a privity between all the parties. The debtor had sold his goods, and the purchaser had agreed to pay the purchase-money to the creditors of the seller. Solomon was mentioned by name, the others generally. As the case was before the court, Pope, one of the creditors, had garnisheed the purchaser, and he, Pope, knowing the terms on which the purchaser had bought, filed a bill to attack Solomon's debt on account of usury. Here was a fund belonging to an absconded debtor, in hand, none of the debts were in judgment, the fund had been, as the record was before the court, appropriated by the debtor to the creditors. And this court, on the idea, we suppose, that under the circumstances of the case the principles of a trust or the usages of a bankrupt court were applicable, sustained the bill. The privity then existing, by reason of the written orders of the debtor, make that case stand on special circumstances. Otherwise it would be contrary to the uniform current of decisions, and a dangerous innovation on established principles." Notwithstanding this sharp criticism, the ruling in *Pope* v. *Solomon* has not been confined to the peculiar facts of that case, but has been followed in subsequent cases, wherein the facts were dissimilar, but which involved the right of one creditor of an insolvent debtor to raise the question of usury relatively to transactions between such debtor and another creditor. So that, as shown by Presiding Justice Lumpkin in the opinion in *Stone* v. *Georgia Loan & Trust Co.,* 107 *Ga.* 524, the principle announced in that case, as applied to usury cases, may be now considered as firmly established in this State. Indeed, as he points out in that opinion, our Civil Code now applies that principle to the subject of usury in the following language: "The plea of usury is personal; but a creditor has no right to collect usurious interest from an insolvent debtor to the prejudice of other creditors." But the application of this principle has not been extended beyond the usury cases, and we deem it unwise that it should be. Those cases must stand in a class apart to themselves. The plea of coverture being a personal privilege, we are clearly of opinion that no one should have the right

to question the validity of a mortgage executed by a married woman as security for the debt of another, whether such debt be the debt of her husband or of some one else, except the woman herself or her privies in blood or estate. We are equally clear that a mere creditor of hers is not her privy in estate.

5. Section 2727 of the Civil Code, which provides that an unrecorded mortgage is "postponed to all other liens created or obtained . . prior to the actual record of the mortgage," refers to liens created or obtained during the lifetime of the mortgagor. Standing alone, this section would seem to give a general judgment obtained against the estate of a decedent priority over a mortgage executed before the judgment but not recorded. But the statute of distribution provides that "Judgments, mortgages, and other liens created during the lifetime of the deceased, [are] to be paid according to the priority of their lien," and gives them the sixth place in the order of distribution of insolvent estates. Civil Code, § 3424(6). This clearly excludes the idea that a judgment obtained after the death of the judgment debtor is to have any priority of lien, as a judgment, upon the assets of his estate. It also clearly includes the idea that a mortgage, whether recorded or not, is entitled after the death of the mortgagor to whatever priority of lien it had when he died. So the provisions of these two sections of the Civil Code are to be construed together and in harmony with each other. Subsequent paragraphs of section 3424 give the order of priority of debts ranking below liens created in the lifetime of the deceased, placing "All liquidated demands," including promissory notes, etc., in the eighth class. In construing this distribution statute, it has been repeatedly held that, in the distribution of an insolvent estate of a decedent, a judgment obtained against the administrator thereof ranks no higher than the claim upon which it is based. Consequently a mere general judgment against the estate of a decedent can neither take precedence over, nor stand upon an equal footing with, an unrecorded mortgage executed by him. Counsel for plaintiff in error contend "that the word 'mortgages' in the sixth paragraph of section 3424 means a mortgage executed and recorded in accordance with law, such a mortgage only as would be good against a subsequent judgment if the intestate had remained in life, because a mortgage unattested and unrecorded according to the provisions of section 2727 is not such a lien as

could claim the fund in a contest with third persons who are judgment creditors." The sixth paragraph of section 3424 includes all mortgages "created during the lifetime of the deceased," and provides that they shall be paid according to the priority of their liens. It makes no exception as to unrecorded mortgages, but applies to all mortgages alike, whether recorded or not. They all take effect according to the priorities of their liens; and an unrecorded mortgage takes effect according to the priority of its lien, which is the priority of the lien appertainng to an unrecorded mortgage; and this, in the distribution of the insolvent estate of a decedent, is superior to that of a general judgment obtained after his death, because such judgment, in such distribution, ranks no higher than the claim upon which it is founded.

It follows that the court did not err in directing the verdict in favor of the mortgagee.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*