### 33480. CARSON v. THE STATE.

MARSHALL, Justice.

The defendant appeals from his conviction of possession of a sawed-off shotgun in violation of Code Ann. § 26-9911a (Ga. L. 1968, pp. 983, 984). Jurisdiction is in this court by reason of an attack on the constitutionality of a statute.

The evidence showed the following circumstances of the defendant's arrest. A state trooper stopped at the defendant's automobile, which was parked alongside Interstate Highway 75, to offer assistance if needed. When the defendant complied with the trooper's request to get out of the vehicle, the odor of alcohol was detected on the defendant's breath. The defendant told the trooper that he was bound for Florida, despite the fact that his automobile was adjacent to the northbound lanes and contained no luggage or clothing in the passenger compartment. The defendant voluntarily consented to open the trunk, wherein were found several sets of automobile rims and tires and a current Georgia automobile license tag, which was determined by a radio check to be stolen. The trooper learned by questioning the defendant that he was a parolee from a federal prison under a bank-robbery sentence. A blood-alcohol test (indicating .03 percent alcohol) was made at the jail, and the defendant was arrested on charges of driving under the influence and of possession of a stolen license tag. The defendant's automobile was locked and left alongside I-75 for less than one half hour, after which time, in an on-the-scene inventory search prior to towing the vehicle in, the sheriff observed and seized a shotgun which was partially protruding from underneath the right

(passenger's) side of the front seat.

1. The appellant contends that the "search" of his automobile was invalid because it was conducted outside the accused's presence. In the present case, as in *Lee v. State,* 129 Ga. App. 82 (198 SE2d 720) (1973), "the evidence sought to be suppressed was discovered, not by means of a search and seizure in a technical sense, but was discovered by a police officer who had a right to be in the position he was in at the time he discovered the [contraband]. This evidence was in plain view and was discovered while in the process of making a routine inventory of valuables in an impounded car in accordance with police regulations [and Code Ann. § 27-302 (Ga. L. 1966, pp. 567, 568)]." *Lee v. State,* supra, p. 83. We know of no requirement for the accused's presence during such a search. Under decisions of the United States Supreme Court, moreover, a warrantless search of an automobile for the discovery and preservation of criminal evidence may be made either at the scene of a lawful custodial arrest or at a later time and place (as the station house), where, it is assumed, the accused would not be physically present at the actual making of the search or inventory. See *Glover v. State,* 139 Ga. App. 162 (2) (227 SE2d 921) (1976) and cits.

Nor was the seizure of the evidence invalid because the sheriff made no written inventory of the articles seized, as required by Code Ann. § 27-302 (Ga. L. 1966, pp. 567, 568), and, the appellant contends, merely searched for items of evidentiary, not monetary, value. The failure to furnish appellant an inventory is a ministerial act and does not affect the validity of the search and seizure. *Carter v. State,* 232 Ga. 654, 659 (6) (208 SE2d 474) (1974) and cit. The motive for the search was irrelevant because the search was authorized and required not only by Code Ann. § 27-302, supra, but also by Code Ann. § 27-301 (Ga. L. 1966, p. 567) and the line of cases cited in *Glover v. State,* supra.

2. Error is enumerated on the admission in evidence, over objection, of testimony of the state's witness, the arresting officer, that he had test-fired the subject sawed-off shotgun outside the courtroom during the lunch recess of the trial and found it to be operative.

The appellant concedes that, within the discretion of the trial judge, experiments may be conducted on evidence either in court (*Hudson v. State,* 46 Ga. App. 668 (1) (168 SE 912) (1933)) or out of court (*Hicks v. State,* 146 Ga. 221 (2) (91 SE 57) (1916)) for the purpose of using the result as evidence. The appellant contends, however, that no foundation was laid for the introduction of the test result absent testimony as to whether the gun had been altered or tampered with while it was out of the courtroom, the method used to fire the weapon, whether a conventional shell was used in the experiment, and whether the jury had been protected from seeing or hearing results of the experiment.

"It is well settled that where the results of a chemical or other technical analysis of an item are sought to be introduced into evidence, it must be shown with reasonable certainty that there has been no alteration or substitution of the item. And, in such a case the test of reasonable certainty is not met where there is missing a vital link in the chain of possession of the item. [Cits.] Factors to be considered in making a determination of whether physical objects connected with commission of a crime are substantially in the same condition as when the crime was committed, so that they can be admitted into evidence, or [are?] the nature of the article, circumstances surrounding its preservation and custody, and the likelihood of intermeddlers tempering [sic] with it. If upon consideration of such factors the trial judge is satisfied that in reasonable probability, the article has not been changed in important respects, he may permit its introduction into evidence. Gallego v. United States, 276 F2d 914 (9th Cir. 1960)." *Epps v. State,* 134 Ga. App. 429, 433 (6) (214 SE2d 703) (1975). In this case, the test was performed under the supervision of counsel for both parties and of the trial judge, who stated that he had observed the possession of the weapon from the time it left the courtroom until it was returned. There was no evidence presented by the appellant to show any alteration or tampering with the weapon or use of unconventional shells in or method of firing of the weapon. "Where no evidence indicating otherwise is produced, the presumption of regularity supports the

official acts of public officers, and the courts presume that they have properly discharged their official duty. Pasadena Research Laboratories v. United States, 169 F2d 375, 381." *Epps v. State,* supra, p. 434.

There was likewise no proof that the jury or any jurors may have "seen or heard the result of the experiment," but, even if such was the case, it is difficult to see any error therein, inasmuch as the judge in his discretion could have allowed the experiment to have been conducted in the jury's presence. The whole purpose of the experiment was to make known to the jury the result thereof. It is interesting to note that, although the appellant attacks the constitutionality of Code Ann. § 26-9915a (Ga. L. 1968, pp. 983, 986) on the ground that it shifts to the defendant the burden of proof of any exception, excuse, proviso or exemption of the law,[1] including that the weapon is inoperative, as provided in Code Ann. § 26-9914a (c) (Ga. L. 1968, pp. 983, 985), yet he would prevent the state from carrying that very burden by proving the weapon to have been in fact operative.

This enumerated error is without merit.

3. The appellant contends that the state failed to carry its burden of proving the dimensions of the weapon which the Code (§ 26-9913a (a, 2); Ga. L. 1968, pp. 983, 984; 1974, p. 449) specifies to constitute a "sawed-off shotgun," i. e., "having one or more barrels less than 18 inches in length or . . . an overall length of less than 26 inches." Although there was no testimony as to the dimensions of the weapon, the weapon itself was introduced in evidence, it went out with the jury to the jury room for their deliberations, and the trial judge charged the provisions of Code Ann. § 26-9913a (a, 2), supra. It is argued that the jury's implicit finding that the weapon was the requisite length must have been based upon either their inaccurate sensory perceptions or an unauthorized experiment on the evidence.

The state prima facie carried its burden of proof by introducing in evidence the weapon itself, which was the

---

[1] This contention is ruled on in Division 5 (b) hereinafter.

best evidence of its size. "All properly introduced documentary and demonstrative evidence will be taken into the jury room when the jury retires. This includes photographs, guns and other objects . . . The jury may examine and evaluate objects taken to the jury room, so long as their examinations and tests do not have the effect of introducing new evidence. Thus they may use a magnifying glass to examine evidence. The jury may smell and taste the contents of a jug to determine if it contained whiskey." 11 EGL Evidence, § 91, citing, inter alia, *Moss v. State,* 166 Ga. 517 (143 SE 900) (1928); *Smith v. State,* 122 Ga. 154 (50 SE 62) (1905); *Union v. State,* 7 Ga. App. 27 (66 SE 24) (1909); Annot., 95 ALR2d 351.

The burden is on the appellant to show harm as well as error. *Chenault v. State,* 234 Ga. 216, 220 (2) (215 SE2d 223) (1975) and cits. The jurors, who were presumedly intelligent (*Guy v. State,* 138 Ga. App. 11 (5) (225 SE2d 492) (1976); *Anderson v. State,* 142 Ga. App. 282 (1) (235 SE2d 675) (1977)), also can be presumed to have been certain enough from a visual examination of the evidence (which was not new evidence) and from their familiarity with the length of an inch from common experience, that the weapon met the statutory dimensions; if not, they would have requested the use of a ruler, or expressed their doubt to the trial judge. Likewise, the trial judge apparently had no doubt from his visual inspection of the evidence, nor did counsel for the defendant, who made no tender in evidence of a ruler to rebut the prima facie proof and, indeed, on appeal did not have the weapon sent up and does not even now contend that the weapon does not fit the statutory dimensions. "It is the duty of this court to construe the evidence most strongly in support of a verdict which has been approved by the trial judge." *Associated Mutuals, Inc. v. Pope Lumber Co.,* 200 Ga. 487, 496 (4) (37 SE2d 393) (1946) and cit.; *Johnson v. State,* 231 Ga. 138 (1) (200 SE2d 734) (1973). This is based on the fact that "[i]n the trial of a criminal case the jurors are the only and final arbiters of the facts, and when a case reaches this court, where no error of law has been committed on the trial and the trial judge has approved the verdict, and it is supported by any evidence, however slight, this court is

powerless to interfere." *Colfield v. State,* 41 Ga. App. 375 (153 SE 92) (1930); *Anderson v. State,* 142 Ga. App. 282, supra, p. 283.

This enumerated error is without merit.

4. The evidence supports the finding that the defendant was in possession of the sawed-off shotgun at the time of his arrest. "The contents of an automobile are presumed to be those of one who operates and is in charge of it, and this applies particularly where the operator is also the owner, as here. [Cit.]" *Williams v. State,* 129 Ga. App. 103, 106 (1) (198 SE2d 683) (1973). The defendant was alone in his automobile when arrested. Although the car was left unattended alongside the highway for about 20 minutes between the times of the defendant's arrest and the discovery of the weapon, it was locked during this interval. This evidence did not demand the finding of other reasonable hypotheses.

5. (a) The Georgia Firearms and Weapons Act, Code Ann. §§ 26-9910a through 26-9916a (Ga. L. 1968, p. 983 et seq.) is not, as the appellant contends, in violation of Art. I, Sec. I, Par. V of the Georgia Constitution of 1976 (Code Ann. § 2-105), which provides, "The right of the people to keep and bear arms, shall not be infringed, but the General Assembly shall have power to prescribe the manner in which arms may be borne." .

In *Strickland v. State,* 137 Ga. 1 (72 SE 260) (1911), this court, in ruling on the constitutional right of the people to keep and bear arms, reviewed its own previous decisions on the matter, including *Nunn v. State,* 1 Ga. 243 (1846) and *Hill v. State,* 53 Ga. 472 (1874), as well as foreign cases. Foreign cases were cited to the effect that the prohibition of keeping and carrying certain kinds of weapons is justified for the purpose of preventing crime, under the general police power of regulation of the state, the question in each case being "whether the particular regulation involved is legitimate and reasonably within the police power, or whether it is arbitrary, and, under the name of regulation, amounts to a deprivation of the constitutional right." *Strickland,* supra, p. 7.

In referring to *Nunn v. State,* supra, the court in *Strickland,* at p. 8, held that "[t]he opinion contains some broad language used in discussion; but evidently it was

never intended to hold that men, women, and children had some inherent *right to keep* and carry arms or weapons *of every description,* which could not be infringed by the legislature, unless as a result of the constitutional provision under consideration." (Emphasis supplied.)

The fact that the present Constitution omitted the phrase, "A well-regulated militia being necessary to the security of a free State," which appeared in earlier Constitutions preceding the provision of the right to keep and bear arms, does not affect the constitutionality of the Act in question, because the Act can be sustained as a legitimate exercise of the police power of the state, as indicated hereinabove. It was not arbitrary or unreasonable to prohibit the keeping and carrying of sawed-off shotguns, which are of a size such as can easily be concealed and which are adapted to and commonly used for criminal purposes. The Act does not prohibit the bearing of *all* arms. Even the *Nunn* case, 1 Ga. 243, supra, held that a law is unconstitutional "so far as it cuts off the exercise of the right of the citizen *altogether* to bear arms . . ." (Emphasis supplied.)

(b) The appellant contends that the Georgia Firearms and Weapons Act is in violation of the due process clauses of the State and Federal Constitutions, in that Code Ann. § 26-9915a (Ga. L. 1968, pp. 983, 986) puts upon the defendant the burden of proof of any "exception, excuse, proviso or exemption" contained in the Act.

"This court will not pass upon the constitutionality of a statute where a determination of such question is not essential to a disposition of the case." *Waller v. Conner,* 218 Ga. 633 (2) (129 SE2d 845) (1963).[2] The burden was not shifted to the defendant to prove the exception, excuse, proviso or exemption of § 26-9914a (c), that the weapon was inoperative, because the state assumed this burden in this case by conducting an out-of-court experiment. Accordingly, this constitutional argument shows no reversible error.

---

[2] As to the constitutionality of the statute in question, see Patterson v. New York, 432 U. S. 197 (97 SC 2319, 53 LE2d 281) (1977).

*Judgment affirmed. All the Justices concur.*

Submitted May 8, 1978 — Decided June 27, 1978 — Rehearing denied July 21, 1978.

*John D. McCord, III,* for appellant.